UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>      Defendant. | No. 08-01789 (LGB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,<br><br>      Plaintiff,<br>v.<br><br>SQUARE ONE FUND LTD.,<br><br>      Defendant. | Adv. Pro. No. 10-04330 (LGB) |

## MEMORANDUM OPINION

**APPEARANCES**

BAKER & HOSTETLER, LLP
*Special Counsel for Irving H. Picard, Trustee*
600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626
By: Marco Molina
   Victoria Stork

**HON. LISA G. BECKERMAN**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding (the "Adversary Proceeding") arises from the approximately $65 billion Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") through Bernard L. Madoff Investment Securities LLC ("BLMIS"). On November 29, 2010, Plaintiff Irving H. Picard (the "Trustee" or "Plaintiff"), as the trustee for the substantively consolidated liquidation of BLMIS, under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"), and the estate of Bernard L. Madoff, filed his initial complaint (the "Complaint"), initiating the Adversary Proceeding against Defendant Square One Fund, Ltd. ("Square One" or "Defendant"). Compl., Dkt. No. 1.

Before the Court is the Trustee's motion for summary judgment (the "Motion for Summary Judgment") seeking avoidance of initial transfers and awarding judgment in the Trustee's favor in the amount of $6,410,000 plus prejudgment interest. Pl's. Mot. Summ. J., Dkt. No. 329. For the reasons set forth in this decision, the Trustee's Motion for Summary Judgment is granted.

I. **Procedural History**

A. **The Trustee's Pleadings**

The Trustee's initial Complaint sought recovery of avoidable transfers of Customer Property[1] (the "Transfers") that Square One received from BLMIS between December 15, 1998 and December 11, 2008 (the "Relevant Period"). Compl. ¶ 4, Dkt. No. 1. Following the filing of the Complaint (*Id.*) and the Trustee's motion to extend time (Mot. Extend Time, Dkt. No. 2), the Court entered an order extending time for service of a summons and for Defendants to serve an answer (Order, March 10, 2011, Dkt. No. 4). On August 28, 2014, the Trustee filed a motion to replead and a request for limited discovery with a supporting memorandum of law and declaration

---

[1] SIPA § 78*lll*(4).

2

(the "Omnibus Motion") (Mot. Replead, Dkt. Nos. 70-71; Griffin Decl., Aug. 28, 2014, Dkt. No. 72), which Square One opposed insofar as the Trustee requested discovery pertinent to the issue of good faith (Opp'n. Mot. Replead, Dkt. No. 128). The Trustee filed a reply to the Omnibus Motion regarding the discovery issue (Trustee Reply, Dkt. No. 132) and two declarations in support of its reply (Simon Decl., Dkt. No. 133; Griffin Decl., Nov. 20, 2017, Dkt. No. 134). On June 19, 2018, the Court entered an order denying the Trustee's Omnibus Motion regarding its request for expedited discovery. Order, June 19, 2018, Dkt. No. 149; Ct. Decision, June 5, 2018, Dkt. No. 148. On November 21, 2018, the Court entered an order approving the Parties' stipulation to extend time for the Defendant to answer, move, or otherwise respond. Order, Nov. 21, 2018, Dkt. No. 165. The same day, the Court entered an additional order approving the Parties' stipulation to allow the Trustee to file an amended complaint. Order, Nov. 21, 2018, Dkt. No. 166. On December 21, 2018, the Trustee filed an Amended Complaint (the "Amended Complaint"). Am. Compl., Dkt. No. 167. The Amended Complaint sought the avoidance and recovery of transfers to Square One from BLMIS, totaling $25,852,737, between December 15, 1998 and December 11, 2008 (the "Filing Date"). Am. Compl. ¶ 2, Dkt. No. 167.

**B. Motion to Dismiss**

On February 14, 2019, Square One filed a Motion to Dismiss the Amended Complaint (the "Motion to Dismiss"). Mot. Dismiss, Dkt. No. 170. On April 1, 2019, the Trustee filed an opposition to the Motion to Dismiss. Opp'n. Mot. Dismiss, Dkt. No. 171. On April 30, 2019, Square One filed a reply in support of its Motion to Dismiss. Reply Mot. Dismiss, Dkt. No. 173. On June 13, 2019, the Court entered an order (the "Motion to Dismiss Order") granting in part and denying in part Square One's Motion to Dismiss, referencing its discussion during a hearing on the Motion to Dismiss held on May 29, 2019. Order, June 13, 2019, Dkt. No. 177. The Motion to

3

Dismiss Order limits the scope of this Adversary Proceeding to the claim for relief seeking avoidance of $6,410,000 in transfers pursuant to section 548(a)(1)(A) of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), and recovery under section 550(a) of the Bankruptcy Code. Dkt. No. 177; Am. Compl. ¶¶ 191-96.

### C. Case Management Plans and Discovery

On July 16, 2019, the Court additionally entered an Order approving an initial Case Management Plan (the "Initial Case Management Plan"). Order, July 16, 2019, Dkt. No. 178. The Initial Case Management Plan set a fact discovery deadline of July 30, 2021 and an expert discovery deadline of March 30, 2022, and it stipulated to the use of a discovery arbitrator to resolve discovery disputes that Parties were unable to resolve by meeting and conferring. *Id.* The Court entered additional case management plans stipulated by the Parties extending both the fact discovery and expert discovery deadlines and/or the deadlines to serve document requests, interrogatories, and requests for admission. Am. Case Management Plan, Dkt. No. 230; Second Am. Case Management Plan, Dkt. No. 245; Third Am. Case Management Plan, Dkt. No. 249; Fourth Am. Case Management Plan, Dkt. No. 260. Fifth Am. Case Management Plan, Dkt. No. 269. Sixth Am. Case Management Plan, Dkt. No. 281. The Fourth Amended Case Management Plan extended the fact discovery deadline to March 31, 2023. Dkt. No. 260.

On March 31, 2023, the Trustee brought forth a claim for sanctions for spoliation against Square One (the "Spoliation Sanctions Claim") which Square One opposed. Molina Decl., March 31, 2023, Dkt. No. 265; Resp. to Molina Decl., Dkt. No. 267. Upon requests from both parties, the Court appointed a discovery arbitrator on June 30, 2023. Order, June 30, 2023, Dkt. No. 279; *see also* Notice of Presentment, May 25, 2023, Dkt. No. 270; Obj. Notice of Presentment, May 26, 2023, Dkt. No. 272; Trustee Reply, June 2, 2023, Dkt. No. 274. The Sixth Amended Case

4

Management Plan included provisions pertaining to the Spoliation Sanctions Claim and dictated further extension of the expert discovery deadlines pending the issuance of a decision by the discovery arbitrator. Dkt. No. 281. On August 27, 2024, the discovery arbitrator determined that the Trustee may present evidence of spoliation to a finder of fact and submit an application for fees but otherwise denied the request for sanctions. Disc. Arbitration Order, Aug. 27, 2024, Dkt. No. 311. The Court entered an Order approving a Seventh Case Management Plan as stipulated by the Parties, extending the expert discovery deadline to June 23, 2025 on December 2, 2024. Order, Dec. 2, 2024, Dkt. No. 312. On December 12, 2024, the discovery arbitrator approved an award for the Trustee of attorney's fees and costs (the "Fee Order"). Disc. Arbitration Order, Dec. 12, 2024, Dkt. No. 315. On July 25, 2025, the discovery arbitrator denied the Trustee's motion for sanctions against Square One for noncompliance with the Fee Order, finding that Square One satisfied its burden of showing its "complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions." Disc. Arbitration Order, July 25, 2025, Dkt. No. 341.

### D. Square One's Pleadings

Following the entry of the Initial Case Management Plan, Square One filed its answer to the Amended Complaint on July 19, 2019. Answer, Dkt. No. 179. The Parties stipulated to allow Square One to file an amended answer to the Amended Complaint, and on February 28, 2022, Square One filed an Amended Answer (the "Amended Answer"). Am. Answer, Dkt. No. 240; *see also* Stipulation, Feb. 28, 2022, Dkt. No. 239. Square One later filed a Statement indicating that it will cease active defense of the Adversary Proceeding (the "Square One Statement"), but that it does not withdraw its Amended Answer or any affirmative defenses stated therein. *See* Square One Statement, March 4, 2025, Dkt. No. 318. Square One asserted four affirmative defenses in its

5

Amended Answer: 1) that the Trustee's Amended Complaint fails to state a claim upon which relief can be granted; 2) that the Trustee's claims are barred to the extent the claims or allegations therein have been dismissed by the Court; 3) that Square One took for value and in good faith within the meaning of 11 U.S.C. § 548(c); and 4) that the Trustee's claims are barred by the Bankruptcy Code's safe harbor provision under 11 U.S.C. § 546(e). Am. Answer ¶¶ 62-65.

### E. The Trustee's Motion for Summary Judgment

The Motion for Summary Judgment asks the Court to grant the Trustee summary judgment on its section 548(a)(1)(A) claim, avoiding the initial transfers between BLMIS and Square One, and enter judgment in favor of the Trustee in the amount of $6,410,000 plus prejudgment interest. Dkt. No. 329. In support of the Motion for Summary Judgment, the Trustee filed a Statement of Material Facts (the "Trustee Statement of Facts"). Dkt. No. 330. In further support of the Motion for Summary Judgment, the Trustee filed the Declaration of Marco Molina (the "Molina Decl.") (Dkt. No. 331), the Declaration of Dr. Steve Pomerantz (the "Pomerantz Decl.") (Dkt. No. 332), the Declaration of Lisa M. Collura (the "Collura Decl.") (Dkt. No. 333), the Declaration of Bruce G. Dubinsky (the "Dubinsky Decl.") (Dkt. No. 334), and the Declaration of Matthew B. Greenblatt (the "Greenblatt Decl.") (Dkt. No. 335), (collectively, the "MSJ Declarations"). While it asserted defenses in its Amended Answer, Square One did not otherwise file an opposition to the Motion for Summary Judgment. On July 30, 2025, the Court held a Hearing on the Motion for Summary Judgment (the "MSJ Hearing"), during which counsel for Square One did not appear.

The Court has considered Defendant's Amended Answer, the Square One Statement, the Motion for Summary Judgment and Trustee Statement of Facts, and the MSJ Declarations, all exhibits attached to the MSJ Declarations, the oral argument of parties, including oral argument at the MSJ Hearing, and has reviewed the cases cited to in the pleadings.

6

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 ("Rule 56") is applicable to this Adversary Proceeding by virtue of Bankruptcy Rule 7056. FED. R. BANKR. P. 7056. Pursuant to Rule 56, summary judgment is appropriate when a review of the entire record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party "bears the burden of establishing that no genuine issue of material fact exists" and that the undisputed facts entitle the movant to judgment as a matter of law. *See Morales v. Holder*, 351 F. App'x 554, 555 (2d Cir. 2009) (quoting *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1060–61 (2d Cir. 1995)).

If the moving party satisfies this burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and rather must establish the existence of a genuine issue of fact by "citing to particular parts of materials in the record." *Ning Yen Yao v. Kao (In re Kao)*, 612 B.R. 272, 280 (Bankr. S.D.N.Y. 2020) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2019); FED. R. CIV. P. 56(a)) (internal quotation marks and citation omitted). In considering an unopposed summary judgment motion, the Court shall assess whether any material issue of fact remains for trial. *Gustavia Home, LLC v. Owusu*, No. 16-CV-5709 (RA), 2018 WL 2122818, at *6 (S.D.N.Y. May 8, 2018). Where no issue of fact remains, an unopposed moving party may be entitled to summary judgment as a matter of law. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

### III.   DISCUSSION

In assessing whether a genuine issue of material fact exists, the Court must not only examine whether the Trustee has sufficiently plead that no issue of material fact remains but must also examine the extent of Square One's defenses.

### A. Square One's Defenses

Square One did not file an opposition to the motion for summary judgment and thus has not met its burden of producing specific evidence of a question of material fact regarding defenses to the avoidance action. *See 1st Bridge LLC v. William Lee Freeman Garden Apartments LLC*, 2011 WL 2020568, at *1 (S.D.N.Y. May 23, 2011). Nevertheless, "the Court must scrutinize even an unopposed summary judgment motion to satisfy itself that no material issue of fact remains for trial." *U.S. Bank. Tr., N.A. v. Dingman*, 2016 WL 6902480, at *3 (S.D.N.Y. Nov. 22, 2016) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

Since Square One did not oppose the Trustee's Motion for Summary Judgment, the Court shall examine the defenses asserted in Square One's Amended Answer. Square One asserted four affirmative defenses in its Amended Answer. Of these, the Court has made findings against three of the four defenses. First, the contention that the Trustee's Amended Complaint fails to state a claim upon which relief can be granted was addressed in the Court's Motion to Dismiss Order, as the Court found a prima facie claim as to the Count One of the Amended Complaint insofar as it "seeks to avoid the transfers under 11 U.S.C. § 548(a)(1)(A) and recover under 11 U.S.C. § 550." Dkt. No. 177. Next, Square One's second defense is not applicable, as the Court has not dismissed the Trustee's avoidance action under 11 U.S.C. § 548(a)(1)(A), and therefore, any claims or allegations pertaining to that claim remain relevant. Finally, Square One's defense that the Trustee's claims are barred by the Bankruptcy Code's safe harbor provision under 11 U.S.C. §

8

546(e) does not apply because the safe harbor provision under section 546(e) has an explicit carve out for avoidance actions under 11 U.S.C. § 548(a)(1)(A), which is the type of proceeding at issue here. *See, e.g.*, *Picard v. Katz*, 462 B.R. 447, 453 & n.5 (S.D.N.Y. 2011).

The affirmative defense remaining before the Court is the contention that Square One received the transfers at issue in good faith within the meaning of 11 U.S.C. § 548(c). In support of this defense, Square One contends that it did not know facts necessary to conduct further inquiry into BLMIS's fraud, and that Square One would not have discovered the fraudulent purpose of the Transfers even if it had conducted a diligent inquiry. Square One further asserts that it took for value because it invested more in BLMIS than the amount of the Transfers. Am. Answer 63. Square One did not provide additional evidence to support its defenses. Am. Answer 62-65. The Amended Answer did not include any exhibits, and Square One did not otherwise supplement its assertions in other filings.

**B. Evidence Provided in the Trustee's Motion for Summary Judgment**

i.      Fact Discovery

In addressing whether a genuine issue of material fact exists, the Court turns to the evidence pertaining to the Trustee's Motion for Summary Judgment. In addition to the memorandum of law supporting the Motion for Summary Judgment, the Trustee relies on the Trustee Statement of Facts, the MSJ Declarations and accompanying exhibits, including testimony of principals of Square One, for evidentiary support. Dkt. Nos. 330-335. The evidence of record indicates that Square One's principal, Luc Estenne ("Estenne") was a sophisticated and experienced investor who had published materials on risk management in investing and spoke as a "due diligence specialist" advising on hedge fund investment and assessments of risks of fraud. *See* Dkt. No. 330, ¶¶ 139-51. The Trustee Statement of Facts details that Estenne managed and/or acted on behalf of Square

9

One because he created and runs an investment advisory firm named Partners Advisors, S.A. ("Partners Advisors"), and he created and controlled an entity called Square Asset Management ("SAM"), which was Square One's asset manager. *Id.*, ¶¶ 136-37; Molina Decl., Exs. 13-15. According to the record, SAM delegated its duties regarding Square One to Partners Advisors. Dkt. No. 330, ¶ 138; Molina Decl., Ex. 16.

Testimony of Estenne, Square One documents and Partners Advisors documents, such as internal memoranda, documents, and reports, suggest that Estenne and other employees of Partners Advisors and related entities believed or understood that they could not successfully ascertain Madoff's investment strategy while investing with BLMIS. *See* Dkt. No. 330, ¶¶ 165-68, 199-206, 220-22, 178; *see also* Molina Decl. Ex. 13, at 257:14-262:20, 287:10-288:8. In a confidential summary memorandum of Square One, dated June 1, 1999, BLMIS is listed as an investment advisor. Molina Decl. Ex. 18, p. 7. The memorandum states that the investment objective is to "provide investors with access to the trading strategy of Madoff securities," which included a split-strike conversion strategy detailed in Exhibit A of the memorandum. *Id.* at pp. 9, 19-20. Upon request of Madoff and his affiliates, Square One removed its references to BLMIS and Madoff from its later offering documents, including its October 1, 2000 summary confidential memorandum. *See* Molina Decl., Ex. 13 at 182:16-25, Ex. 49, Ex. 50, Ex. 51 at pp. 7, 9, 17-18, 20. A Partners Advisors document labeled "Bernard L. Madoff Investment Securities Due Diligence" (the "Partners Due Diligence Memo") memorialized concerns as to a "lack of transparency issue" and "mystery" regarding Madoff's ability "to generate such consistent returns with such a simplistic strategy." *Id.*, Ex. 53 at p. 6.

The record further demonstrates apprehensions in Madoff's and BLMIS's involvement with Square One, including concerns about conflicts of interest. The Partners Due Diligence

10

Memo, dated June 28, 2000, included conclusions that Square One Fund's negative points were a "[l]ack of independence in the NAV calculation," a "[p]otential conflict of interest as Madoff is a broker, an investment advisers [sic] and a custodian," and a "dependent board of directors." *Id.* at p. 9. A Square One manager monitoring report of BLMIS, dated May 26, 2004, stated concern with "the lack of separation of functions as Madoff Investment Securities is its own broker, prime brok[er], custodian and administrator." Molina Decl., Ex. 54 at p. 2.

The Trustee provided further evidence to support the contention that Square One and Partners Advisors were aware of trading anomalies with respect to Square One's BLMIS Account. Dkt. No. 330 ¶¶ 179-91. The record reflects that Estenne and Partners Advisors analyzed investment performance and risk of Square One against the S&P 500 Index in a series of reports. *Id.*, Molina Decl., Exs. 45, 55-59. Testimony of Partners Advisors personnel ultimately concluded that BLMIS's returns were unjustifiable in the market at the time, that "there was no way to explain how the returns were generated," that members of the investment community in Geneva suspected that Madoff's actual implemented strategy was likely illegal, and that the returns were "too good to be true." *Id.*, ¶¶ 191-192, 194, 196-197, 202-215; *see also* Molina Decl., Ex. 27 at 237:5-243:4, 272:7-272:4, 283:10-17, Ex. 64 at p. 2.

    ii.    <u>Expert Discovery</u>

In addition to the evidence produced during fact discovery, the Trustee provided expert reports, including that of Dr. Steve Pomerantz ("Pomerantz"), a specialist in economic and investment management consulting, economic damage assessment, and litigation support, Lisa M. Collura ("Collura"), a forensic accounting and financial fraud investigative services specialist, Bruce G. Dubinsky ("Dubinsky"), a specialist in forensic accounting, fraud investigation, and dispute analysis, and Matthew G. Greenblatt, a specialist in auditing, accounting, litigation

11

consulting, forensic accounting, internal investigations, post-acquisition and shareholder disputes, anti-money laundering, and advising troubled companies. *See* Dkt. Nos. 332-335.

Trustee's counsel retained Dubinsky in June 2011 to "provide forensic accounting analyses and render certain expert opinions and conclusions." Dubinsky Decl. Attach. A, ¶ 1. Dubinsky's report, dated October 23, 2024, concluded that fraud permeated BLMIS, that the investment advisory business was a Ponzi scheme, that BLMIS was insolvent beginning on or before December 11, 2002 and at all points thereafter, and that Madoff Securities International Limited facilitated the transfer of funds out of the BLMIS investment advisory business. *Id.* at ¶ 17.

Collura's expert report, dated December 9, 2024 and read in conjunction with the Collura report dated January 16, 2019, conducted an account tracing analysis between BLMIS's investment advisory cash activity and Square One's BLMIS customer account during the relevant period between December 11, 2006 and December 11, 2008 (the "Two-Year Period"). Collura Decl., Attach. A, Attach. B at ¶¶ 5-6. Collura's report found that "100% of the total dollar amount of withdrawals reflected on the customer statements" for Square One's BLMIS customer account during the Two-Year Period went to a bank account held by Square One. *Id.* at ¶ 27.

Greenblatt's expert report, dated December 9, 2024 and read in conjunction with the Greenblatt report dated November 15, 2012, detailed a principal balance calculation for Square One's BLMIS account, finding that $25,852,737 of the $28,097,165 of principal available in the account was withdrawn between February 1, 1999 and December 11, 2008. Greenblatt Decl., Attach. A, Attach. B at ¶ 22. Greenblatt determined that a total of $6,410,000 was withdrawn within the Two-Year Period. Greenblatt Decl., Attach. B at ¶ 22.

The Pomerantz report, dated December 9, 2024, describes the investment management industry and the roles of Madoff, BLMIS, and Square One, and the customs of due diligence and

12

customary practice in the investment management industry. Pomerantz Decl., Attach. A. Based on the analyses outlined in the report, Pomerantz opined that the due diligence performed on, and information otherwise available regarding BLMIS and Madoff, revealed numerous red flags pertaining to Square One's BLMIS account. *Id.* at ¶ 87.

In particular, the Pomerantz report concluded that a process-based analysis of Madoff's purported split-strike conversion investment strategy (the "SSC Strategy") and its implementation would have revealed "(i) impossibilities where the only reasonable explanation was fraud; (ii) indications that Madoff was not executing the purported strategy; (iii) inconsistencies with the strategy; and (iv) inconsistencies with industry customs and practices." *Id.* at ¶ 93. In evaluating the SSC strategy, the Pomerantz report noted the strategy did not appropriately produce returns that correlated to the underlying stock or the S&P 100 Index. *Id.* at ¶ 101. Pomerantz also observed that the SSC Strategy would have had some level of volatility to have generated gains. *Id.* at ¶ 104. Regarding scalability, Pomerantz found that by 2001, there was insufficient call option notational value within the S&P 100 to support the $7 billion valuation of BLMIS's assets under management at the time and its increased valuations thereafter. *Id.* at ¶¶ 164-69.

Beyond the evaluation of the SSC Strategy, the Pomerantz report opines that BLMIS deviated from industry norms by serving as investment advisor for the Square One BLMIS Account in addition to acting as its own broker-dealer, custodian, and administrator. *Id.* at ¶ 108. The Pomerantz report further concludes that the concentration of duties having been allocated to just Madoff, the lack of credentials and short staffing of BLMIS's alleged multi-billion-dollar investment business, and the lack of disclosure and operational transparency of BLMIS were red flags. *Id.* at ¶¶ 210, 217-18, 219, 225.

13

The Pomerantz report further presents a performance-based analysis of BLMIS—opining that BLMIS's performance was a red flag that Madoff had not executed the SSC Strategy. *Id.* at ¶ 267. The report pointed to BLMIS's anomalous performance in times of market stress, its ability to buy below and sell above respective stock volume weighted average price levels with consistency, and its consistent, statistically improbable, outperformance of peers. *Id.* at ¶¶ 229-32, 243-47, 256-67.

Finally, the Pomerantz report opined that BLMIS's operational and fee structures did not conform to industry norms and thus were red flags demanding further due diligence. *Id.* at ¶¶ 327-41. The analyses and information set forth in the Pomerantz report and its exhibits support the assertion that quantitative and qualitative red flags existed to lead a reasonable investor in Square One's position to divest or conduct further due diligence on BLMIS. *Id.* at ¶¶ 2, 108-09, 111, 114, 116, 126, 151, 169, 342.

Based on the Trustee's uncontroverted Motion for Summary Judgment, the Trustee Statement of Facts, and the MSJ Declarations and accompanying exhibits, the Trustee has sufficiently satisfied its burden regarding the granting of summary judgment.

C. Square One's Involvement

The Court notes that Square One has not provided a response to the Motion for Summary Judgment, nor provided evidence to controvert the facts set forth in the Trustee's motion. While Square One elected not to file any opposition to the Motion for Summary Judgment, it meaningfully participated in the case through discovery and had the opportunity to respond to the Trustee's Motion for Summary Judgment and raise a dispute as to material facts.

The Parties stipulated to the Seventh Amended Case Management Plan (the "Case Management Plan") and the Court entered it on December 12, 2024. Dkt. No. 312. The Case

14

Management Plan established the deadlines for a) disclosure of rebuttal expert opinions; b) applications for permission of the Court for expert testimony beyond the scope of the opinion covered by the disclosures under section 3B of the Case Management Plan; c) disclosures and request for production of documents underlying any expert opinions and rebuttal expert opinions; d) depositions of expert witnesses; and e) all expert discovery. *Id.* Both counsel for the Trustee and counsel for Square One stipulated to the Case Management Plan approximately four months prior to Square One's March 4, 2025 letter indicating its intent to cease its activity in the adversary proceeding. Dkt. No. 318.

The record indicates that Square One participated in fact discovery, including meet and confers, production of documents, electronically stored information, and emails, and participation in depositions, prior to March 4, 2025. *See* Dkt. No. 311; Molina Decl., March 31, 2023, Dkt. No. 265. Further, Square One assented to engage in expert discovery and had the opportunity to depose the expert witnesses retained by the Trustee. After participation in discovery over several years and agreeing to and having knowledge of pending expert discovery, Square One left the Trustee's Motion for Summary Judgment unanswered. Additionally, as previously stated, Square One did not cite to any documents or exhibits in its Amended Answer. As a result, Square One failed to establish the existence of a genuine issue of material fact.

## IV.    CONCLUSION

Through its Motion for Summary Judgment and associated filings, the Trustee has met its burden of establishing that there is no genuine issue of material fact. Square One chose not to oppose the Trustee's Motion for Summary Judgment. Thus, Square One has not met its burden of producing evidence of a question of fact regarding any defenses to the avoidance action under 11 U.S.C. § 548(a)(1)(A). To the extent that Square One's Amended Answer alleges affirmative

15

defenses, no evidence was submitted supporting the defenses. Additionally, the record indicates that Square One participated in fact discovery and assented to participation in expert witness discovery prior to ceasing involvement in the Adversary Proceeding. For these reasons, the Court concludes that the Trustee has met its burden for the granting of summary judgment and that Square One has failed to raise any triable issue of fact to defeat the Trustee's Motion for Summary Judgment. Accordingly, the Court grants the Trustee's Motion for Summary Judgment and requests that the Trustee submit to the Court a proposed form of order granting the Trustee's Motion for Summary Judgment.

Dated: September 22, 2025
      New York, New York

*/s/ Lisa G. Beckerman*
THE HONORABLE LISA G. BECKERMAN
UNITED STATES BANKRUPTCY JUDGE